**Filed Under Seal**
File Date: October 27, 2022
Case Number: 22-cr-490
Judge Rachel P. Kovner
Magistrate Judge Ramon E. Reyes, Jr

DMP:AFM
F. #2016R00456

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ANDREY SHEVLYAKOV,
also known as "Andrei Sevljakov,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. ________________________
(T. 13, U.S.C., §§ 305(a)(1) and 305(a)(3); T. 18, U.S.C., §§ 554, 981(a)(1)(C), 982(a)(1), 982(b)(1), 1349, 1956(a)(2)(A), 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c); T. 50, U.S.C., §§ 1702, 1705 and 4819; T. 15, C.F.R., § 764.2)

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

1. The defendant ANDREY SHEVLYAKOV, also known as "Andrei Sevljakov," was a national of Estonia, residing in Tallinn, Estonia. SHEVLYAKOV was engaged in the business of exporting microelectronics and other high-tech products from the United States.

2. The defendant ANDREY SHEVLYAKOV did business through several Estonian-based business entities (the "Estonian Shell Companies"), which he operated together with coconspirators. The Estonian Shell Companies included the following companies:

a. Yaxart OÜ ("Yaxart") was purchased by the defendant ANDREY SHEVLYAKOV's wife on or about February 1, 2008. It was renamed Metsandus OÜ after Yaxart was added to the U.S. Department of Commerce's Entity List on or about October 9, 2012, as further described below. SHEVLYAKOV was a shareholder of Yaxart.

b. Anmarna OÜ ("Anmarna") was registered by the defendant ANDREY SHEVLYAKOV on or about January 16, 2012, and subsequently renamed Horvelt OÜ. Anmarna and Yaxart were registered at the same address in Estonian official records.

c. Marnik OÜ ("Marnik") was registered by the defendant ANDREY SHEVLYAKOV on or about June 5, 2013.

d. Nanikmar OÜ ("Nanikmar") was registered by the defendant ANDREY SHEVLYAKOV's wife on or about May 24, 2017, and SHEVLYAKOV was a shareholder.

e. N.A.M.N. OÜ ("N.A.M.N.") was registered on or about July 26, 2018 by a coconspirator ("Coconspirator-1"), an individual whose identity is known to the Grand Jury.

f. Component 1 OÜ ("Component 1") was registered on or about July 30, 2018 by a second coconspirator ("Coconspirator -2"), an individual whose identity is known to the Grand Jury. It was subsequently renamed Moniciporio OÜ, but its registered email address in Estonian official records remained unchanged.

g. Eurogate OÜ ("Eurogate") was registered on or about January 29, 2004. As of October 19, 2018, Coconspirator-2 became Eurogate's owner and sole shareholder.

h. Nikand OÜ ("Nikand") was registered on or about September 4, 2019 by the defendant ANDREY SHEVLYAKOV, who was the company's sole shareholder. Nikand shared a corporate address with Anmarna and Marnik.

## STATUTORY AND REGULATORY BACKGROUND

### A. The International Emergency Economic Powers Act

3. The International Emergency Economic Powers Act ("IEEPA") authorized the President of the United States (the "President") to deal with unusual and extraordinary threats to the national security, foreign policy or economy of the United States. See 50 U.S.C. § 1701(a). Pursuant to that authority, IEEPA empowered the President, among other things, to issue regulations governing exports from the United States after declaring a national emergency in response to an unusual and extraordinary threat.

4. Pursuant to IEEPA, on or about August 17, 2001, the President issued Executive Order 13,222, which declared a national emergency with respect to the unusual and extraordinary threat to the national security, foreign policy and economy of the United States in light of the expiration of the Export Administration Act ("EAA"), which lapsed on or about August 17, 2001. 66 Fed. Reg. 44,025 (Aug. 22, 2001). While in effect, the EAA regulated the export of goods, technology and software from the United States.

### B. The Export Administration Regulations

5. Pursuant to the provisions of the EAA, the Department of Commerce ("DOC")'s Bureau of Industry and Security ("BIS") promulgated the Export Administration

Regulations ("EAR"), 15 C.F.R. §§ 730-774, which contained restrictions on the export of goods outside of the United States.

6. Through the EAR, BIS reviewed and controlled the export from the United States to foreign countries of certain goods. In particular, BIS placed restrictions on the export and re-export of items that it determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depended on several factors, including the technical characteristics of the item, the destination country, the end user and the end use.

7. The most sensitive items subject to EAR controls appeared on the Commerce Control List ("CCL") set forth in Title 15, Code of Federal Regulations, part 774, Supplement Number 1. Items listed on the CCL were categorized by Export Control Classification Number ("ECCN"), each of which had export control requirements depending on destination, end use and end user. For example, for national security reasons, analog-to-digital converters having ECCN 3A001.a5.a3 were barred from export to Russia without a license.

8. In addition to controlling certain items, BIS also maintained a list of foreign persons and entities (the "Entity List") with respect to which exports were restricted. See 15 C.F.R. § 744 Supp. No. 4.

9. BIS's primary mechanism for controlling exports was the license requirement. A license was required when exporting to a given country items that were designated on the CCL as sensitive with respect to that country. In addition, a license was required in order to export any item regulated under the EAR (whether or not it appeared on

the CCL) to an entity or person on the Entity List. See 15 C.F.R. §§ 744.11, 744.16. The specific license requirements for each entity were specified in the entity's listing on the Entity List. In order to obtain a license, the applicant was required to specify the end user of the item by name and address.

10. Under the EAR, no person may engage in conduct prohibited by, or contrary to, the EAR, including the exportation or re-exportation of items without first having obtained the required licenses or authorizations from the DOC. 15 CFR § 764.2(a). Additionally, no person may cause, aid, induce, solicit, attempt or conspire to engage in such conduct. 15 CFR § 764.2(b)-(d). The EAR further prohibited the making of any false or misleading representations or statements to, or the concealment of any material fact from, BIS, either directly or indirectly through another person. 15 CFR § 764.2(g).

11. In Executive Order 13,222, pursuant to IEEPA, the President ordered that the EAR's provisions remain in full force and effect despite the expiration of the EAA. Presidents have issued Executive Notices extending the national emergency declared in Executive Order 13,222. The last such notice was issued in August 2021. See 86 Fed. Reg. 43,901 (Aug. 6, 2021).

12. Under IEEPA, it was a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation or prohibition issued pursuant to the statute. 50 U.S.C. § 1705(a). Willful violations of the EAR constituted criminal offenses under IEEPA. 50 U.S.C. § 1705(c).

C. The Export Control Reform Act

13. On or about August 13, 2018, the President signed into law the National Defense Authorization Act of 2019, which included provisions on export controls,

titled the Export Control Reform Act of 2018 ("ECRA"). 50 U.S.C. §§ 4801 et seq. In part, ECRA provided permanent statutory authority for the EAR for conduct occurring after August 13, 2018.

14. Under ECRA, it was a crime to willfully violate, attempt to violate, conspire to violate or cause a violation of the statute or any order, license, regulation or prohibition issued pursuant to the statute. 50 U.S.C. § 4819(a). Pursuant to Section 4819(b), "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) of this section" is subject to criminal penalties.

THE CRIMINAL SCHEME

15. As set forth below, between approximately October 2012 and May 2022, the defendant ANDREY SHEVLYAKOV and others operated a scheme to export microelectronics from the United States to Estonia for transshipment to end users in Russia without first having obtained the required licenses or authorizations from the DOC.

A. The Department of Commerce Added SHEVYLAKOV to the Entity List

16. On or about October 9, 2012, the DOC added the defendant ANDREY SHEVLYAKOV and Yaxart to the Entity List, identifying SHEVLYAKOV as a resident of Sweden. See 77 Fed. Reg. 61249-01. On or about December 12, 2013, the DOC amended the Entity List to reflect that SHEVLYAKOV resided in Estonia. See 78 Fed. Reg. 75458-01.

17. In connection with the October 2012 listing, the DOC determined that the defendant ANDREY SHEVLYAKOV and others had been "identified during a U.S. Government investigation of a network of companies and individuals involved in the

procurement and delivery of items subject to the EAR and the International Traffic in Arms Regulations ['ITAR'] to Russia in violation of the EAR and ITAR. These persons undertook procurement and delivery activities, activities to conceal the procurement and delivery activities, activities to circumvent EAR and ITAR license requirements, and/or activities to facilitate the procurement of export-restricted items for Russian military-related and other governmental or related end-uses." 77 Fed. Reg. 61249-01.

B. <u>The Scheme to Defraud U.S. Companies</u>

18. Because the defendant ANDREY SHEVLYAKOV was on the Entity List, he was prohibited from causing the export of any item from the United States without a license. In order to export microelectronics without a license, SHEVLYAKOV used the Estonian Shell Companies to place orders and make payments, and misled U.S. companies by failing to disclose his association with the Estonian Shell Companies.

19. The defendant ANDREY SHEVLYAKOV, through the Estonian Shell Companies, and with the assistance of coconspirators, obtained or attempted to obtain the following types of items:

a. Resistors, from a company located in Ronkonkoma, New York, within the Eastern District of New York, on or about April 9, 2014;

b. Multi-conductor cables, from a company located in the District of Arizona, on or about March 10, 2017;

c. Low-noise prescalers and synthesizers, from a company located in the District of Colorado, on or about February 8, 2018;

d. Standard thick film chip resistors, from a company located in the District of Minnesota, on or about May 8, 2018;

e. A high voltage power Schottky rectifier, from a company located in the District of Minnesota, on or about May 18, 2018;

f. Resistors, from a company located in Bohemia, New York, within the Eastern District of New York, on or about October 15, 2018;

g. Analog-to-digital converters, from a company located in the District of Minnesota, on or about August 27, 2019;

h. A rugged high-speed terminal, from a company located in the District of Arizona, on or about October 9, 2019;

i. Integrated circuits, from a company located in the District of Minnesota, on or about January 26, 2021;

j. Dynamic random-access memory, from a company located in the Northern District of Illinois, on or about May 3, 2021;

k. Analog-to-digital converters, from a company located in the Northern District of Texas, on or about June 7, 2021;

l. Printed circuit board connectors, from a company located in the District of Arizona, on or about February 22, 2022; and

m. Printed circuit board headers, from a company located in the Northern District of Illinois, on or about May 25, 2022.

20. Individuals on the Entity List, including the defendant ANDREY SHEVLYAKOV, were prohibited from exporting without a license all of the items identified in paragraphs 19(a) through (m). In addition, the analog-to-digital converters purchased on June 7, 2021 appeared on the CCL, with ECCN 3A001.a5.a3. SHEVLYAKOV did not seek or obtain a license in connection with any of these transactions.

21. The defendant ANDREY SHEVLYAKOV knew that, as an individual on the Entity List, he was prohibited from purchasing items from U.S. manufacturers and distributors and exporting those items from the United States without a license, as demonstrated by, among other things, his communications with U.S. manufacturers and distributors. For example, on or about June 19, 2015, SHEVLYAKOV placed an order with a Massachusetts-based distributor of electronics components ("Exporter-1"), an entity the identity of which is known to the Grand Jury, for 54 micropower temperature switches. SHEVLYAKOV used the name "Andrei Sevljakov" in placing the order on behalf of Anmarna. A representative of Exporter-1 contacted SHEVLYAKOV by email and stated that, because his name appeared on the Entity List, an export license was required for the order to be completed. The email included an image of the entry from the Entity List that listed SHEVLYAKOV. SHEVLYAKOV falsely replied that he was not the person named on the Entity List, but "another person[]" at "another address." Nevertheless, SHEVLYAKOV canceled the order. SHEVLYAKOV, through Anmarna, then placed an order for the same item in the same quantity with another U.S. company. That U.S. company, in turn, placed an order with Exporter-1 for the items to obtain them for SHEVLYAKOV.

22. The defendant ANDREY SHEVLYAKOV also misled U.S. companies by submitting end-user statements to those companies that contained false information about the ultimate destinations of the products to be exported from the United States. SHEVLYAKOV falsely listed various of the Estonian Shell Companies as end users. In fact, SHEVLYAKOV was a reseller whose principal business consisted of transshipping U.S.-manufactured electronics to Russia.

23. The defendant ANDREY SHEVLYAKOV was aware that providing true end-user information for his Russia-based customers could result in denial of the relevant orders, both because certain of the items in which he transacted were barred for transshipment to Russia absent a license from the DOC, and because many U.S. electronics distributors do not sell items to Russian end-users, regardless of whether such items appear on the CCL.

24. Through the Estonian Shell Companies, the defendant ANDREY SHEVLYAKOV exported at least $800,000 worth of items from U.S. electronics manufacturers and distributors between approximately October 2012 and January 2022. A breakdown of the value of transactions by shell company is reflected in the following chart:

| Estonian Shell Company | Approximate Minimum Dollar Value of Purchases |
|---|---|
| Yaxart | $10,800.02 |
| Anmarna | $124,194.05 |
| Component 1 | $215,964.00 |
| Marnik | $119,253.07 |
| Nanikmar | $283,535.68 |
| Nikand | $46,267.21 |
| N.A.M.N. | $10,524.98 |
| Eurogate | $272.84 |

25. To facilitate these transactions, the defendant ANDREY SHEVLYAKOV caused U.S. companies to be paid with funds from accounts located outside the United States. SHEVYLAKOV spread these transactions among multiple purported

buyers, so that the U.S. companies were less likely to notice unusual patterns or high transaction volumes that might cause them to investigate further or decline to proceed with transactions.

COUNT ONE
(Conspiracy to Violate IEEPA)

26. The allegations contained in paragraphs one through 25 are realleged and incorporated as though fully set forth in this paragraph.

27. On or about and between October 9, 2012 and August 13, 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREY SHEVLYAKOV, also known as "Andrei Sevljakov," together with others, did knowingly and willfully conspire to export from the United States items under the jurisdiction of the DOC, to wit: microelectronics, without first having obtained the required licenses from the DOC.

(Title 50, United States Code, Sections 1702 and 1705; Title 15, Code of Federal Regulations, Section 764.2; Title 18, United States Code, Sections 3551 et seq.)

COUNTS TWO THROUGH FOUR
(IEEPA Violations)

28. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

29. On or about the dates listed below and within the districts specified below, the defendant ANDREY SHEVLYAKOV, also known as "Andrei Sevljakov," together with others, did knowingly, intentionally and willfully export, attempt to export, and solicit and cause the export from the United States of items under the jurisdiction of the

DOC, to wit: microelectronics, without having first obtained the required licenses from the DOC.

| Count | Date | Type of Commodity | Location |
|---|---|---|---|
| TWO | 2/8/2018 | Low-noise prescalers and synthesizers | District of Colorado |
| THREE | 5/8/2018 | Standard thick film chip resistors | District of Minnesota |
| FOUR | 5/18/2018 | High voltage power Schottky rectifier | District of Minnesota |

(Title 50, United States Code, Sections 1702 and 1705; Title 15, Code of Federal Regulations, Section 764.2; Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT FIVE
(Conspiracy to Violate ECRA)

30. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

31. On or about and between August 13, 2018 and July 28, 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREY SHEVLYAKOV, also known as "Andrei Sevljakov," together with others, did knowingly and willfully conspire to export from the United States items under the jurisdiction of the DOC, to wit: microelectronics, without first having obtained the required licenses from the DOC.

(Title 50, United States Code, Section 4819; Title 15, Code of Federal Regulations, Section 764.2; Title 18, United States Code, Sections 3551 et seq.)

COUNTS SIX THROUGH TWELVE
(ECRA Violations)

32. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

33. On or about the dates listed below and within the districts specified below, the defendant ANDREY SHEVLYAKOV, also known as "Andrei Sevljakov," together with others, did knowingly, intentionally and willfully export, attempt to export, and solicit and cause the export from the United States of items under the jurisdiction of the DOC, to wit: microelectronics, without having first obtained the required licenses from the DOC.

| Count | Date | Type of Commodity | Location |
|---|---|---|---|
| SIX | 10/15/2018 | Resistors | Eastern District of New York |
| SEVEN | 10/9/2019 | Rugged High Speed Terminal | District of Arizona |
| EIGHT | 1/26/2021 | Integrated Circuit | District of Minnesota |
| NINE | 5/3/2021 | Dynamic random-access memory | Northern District of Illinois |
| TEN | 6/7/2021 | Analog-to-Digital Converters | Northern District of Texas |
| ELEVEN | 2/22/2022 | Printed Circuit Board Connectors | District of Arizona |
| TWELVE | 5/25/2022 | Printed Circuit Board Headers | Northern District of Illinois |

(Title 50, United States Code, Section 4819; Title 15, Code of Federal Regulations, Section 764.2; Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT THIRTEEN
(Mail and Wire Fraud Conspiracy)

34. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

35. On or about and between October 9, 2012 and July 28, 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREY SHEVLYAKOV, also known as "Andrei Sevljakov," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more persons, to wit: U.S. distributors of electronic components, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, to wit: false end-user statements and omissions regarding SHEVLYAKOV's inclusion on the Entity List, and for the purpose of executing such scheme and artifice, (a) to place and cause to be placed in a post office and authorized depository for mail matter, and cause to be sent and delivered by the U.S. Postal Service and private commercial carriers, one or more matters and things, to wit: shipments of merchandise, contrary to Title 18, United States Code, Section 1341; and (b) to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals and sounds, to wit: electronic funds transfers, electronic messages and telephone communications, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT FOURTEEN
(Smuggling)

36. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

37. On or about and between October 9, 2012 and July 28, 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREY SHEVLYAKOV, also known as "Andrei Sevljakov," together with others, did knowingly, intentionally and fraudulently export and send from the United States merchandise, articles and objects, to wit: microelectronics, contrary to United States laws and regulations, to wit: Title 50, United States Code, Sections 1702, 1705(c) and 4819, and Title 15, Code of Federal Regulations, Section 764.2, and did buy and facilitate the transportation and sale of such merchandise, articles and objects prior to exportation, knowing the same to be intended for exportation contrary to such United States laws and regulations.

(Title 18, United States Code, Sections 554, 2 and 3551 et seq.)

COUNTS FIFTEEN AND SIXTEEN
(Money Laundering)

38. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

39. On or about the dates listed below, within the Eastern District of New York and elsewhere, the defendant ANDREY SHEVLYAKOV, also known as "Andrei Sevljakov," together with others, did knowingly and intentionally transport, transmit and transfer monetary instruments and funds to one or more places in the United States from one or more places outside the United States, with the intent to promote the carrying on of one or

more specified unlawful activities, to wit: smuggling, in violation of Title 18, United States Code, Section 554; mail fraud, in violation of Title 18, United States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343; and contravening the Export Administration Regulations, in violation of Title 50, United States Code, Section 1705, as set forth below:

| Count | Date | Transaction |
|---|---|---|
| FIFTEEN | 1/18/2018 | A wire transfer in the amount of approximately $1,222.20 from an SEB Bank account in Estonia to a bank account at JPMorgan Chase in the Southern District of New York held in the name of an electronics exporter located in the District of Colorado ("Exporter-2") |
| SIXTEEN | 3/21/2018 | A wire transfer in the amount of approximately $3,704.14 from an SEB Bank account in Estonia to a bank account at JPMorgan Chase in the Southern District of New York held in the name of Exporter-2 |

(Title 18, United States Code, Sections 1956(a)(2)(A), 2 and 3551 et seq.)

COUNT SEVENTEEN
(Money Laundering Conspiracy)

40. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

41. On or about and between October 9, 2012 and July 28, 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREY SHEVLYAKOV, also known as "Andrei Sevljakov," together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary

instruments and funds to one or more places in the United States from one or more places outside the United States, with the intent to promote the carrying on of one or more specified unlawful activities, to wit: smuggling, in violation of Title 18, United States Code, Section 554; mail fraud, in violation of Title 18, United States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343; and contravening the Export Administration Regulations, in violation of Title 50, United States Code, Sections 1705; contrary to Title 18, United States Code, Section 1956(a)(2)(A).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

COUNT EIGHTEEN
(Failure to File and Submission of False Export Information)

42. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

43. On or about and between October 9, 2012 and July 28, 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREY SHEVLYAKOV, also known as "Andrei Sevljakov," together with others, did knowingly and intentionally fail to file and submit false and misleading export information through the Shippers Export Declaration ("SED") and the Automated Export System ("AES"), to wit: information relating to international shipments of microelectronics from the United States to Estonia.

(Title 13, United States Code, Section 305(a)(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATIONS
AS TO COUNTS ONE, TWO THROUGH FOUR, THIRTEEN AND FOURTEEN

44. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts One, Two through Four, Thirteen and Fourteen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

45. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATIONS
AS TO COUNTS FIVE THROUGH TWELVE

46. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Five through Twelve, the government shall seek forfeiture in accordance with Title 50, United States Code, Section 4819, which requires any person convicted of such offenses to forfeit: (i) any property used or intended to be used, in any manner, to commit or facilitate such offenses; (ii) any property constituting or traceable to the gross proceeds taken, obtained or retained, in connection with or as a result of such offenses; and (iii) any property constituting an item or technology that is exported or intended to be exported in violation of such offenses.

47. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 50, United States Code, Section 4819; Title 21, United States Code, Sections 853(p))

CRIMINAL FORFEITURE ALLEGATIONS
AS TO COUNTS FIFTEEN THROUGH SEVENTEEN

48. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Fifteen through Seventeen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

49. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT EIGHTEEN

50. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Eighteen, the government will seek forfeiture in accordance with Title 13, United States Code, Section 305(a)(3), which requires any person convicted of such offense to forfeit: (a) any interest in, security of, claim against or property or contractual rights of any kind in the goods or tangible items that were the subject of such offense; (b) any interest in, security of, claim against or property or contractual rights of any kind in tangible property that was used in the export or attempt to export that was the subject of such offense; and (c) any property, constituting or derived from, any proceeds obtained directly or indirectly as a result of such offense.

51. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 13, United States Code, Section 305(a)(3); Title 21, United States Code, Section 853(p))

A TRUE BILL

[signature]

FOREPERSON

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

By: [signature: Carolyn Pokorny]

Assistant U.S. Attorney

F.#: 2016R00456

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

ANDREY SHEVLYAKOV,
also known as "Andrei Sevljakov,"

Defendant.

# INDICTMENT

(T. 13, U.S.C., §§ 305(a)(1), 305(a)(3); T. 18, U.S.C., §§ 554, 981(a)(1)(C), 982(a)(1), 982(b)(1), 1349, 1956(a)(2)(A), 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c); T. 50, U.S.C., §§ 1702, 1705 and 4819; T. 15, C.F.R., § 764.2)

*A true bill.*

_________________________ Thomas J. Parodi (signature)
*Foreperson*

*Filed in open court this* __________________ *day,*

*of* ____________ *A.D. 20* _____

__________________________________________
*Clerk*

*Bail, $* ____________

***Alexander Mindlin, Assistant U.S. Attorney (718) 254-6433***