

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JAM:AFM

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 5, 2023

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Andrey Shevlyakov
                 Docket No. 22-CR-490 (RPK)

Dear Judge Kovner:

      The government writes in support of a permanent order of detention with regard to the defendant, Andrey Shevlyakov, who was taken into custody in Estonia on March 28, 2023 and will undergo extradition proceedings to the United States.

      As described in the indictment and herein, the defendant presents a serious risk of flight and has significant ties to foreign jurisdictions, including Russia, a non-extradition country, such that no combination of conditions would suffice to assure his appearance if released.[1]

I.      Relevant Background

      The defendant is charged with facilitating a procurement network which acquired sensitive technologies for Russian end-users, including Russian government entities and military contractors.

      On or about October 9, 2012, the Department of Commerce added the defendant and a company he controlled to the Entity List, a list of persons and businesses barred from exporting items from the United States without first obtaining a license. Shevlyakov's addition

---

[1] Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

to the Entity List reflected his involvement with a network of companies and individuals involved in pursuing U.S. technologies on behalf of Russian government and military end users.

Despite his addition to the Entity List, Shevlyakov continued to procure items from the United States, including hundreds of thousands of dollars' worth of sensitive electronics. The items that Shevlakov procured included low-noise pre-scalers and synthesizers, which are used to conduct high-frequency communications, as well as analog-to-digital converters, which are found in nearly every defense system that must sense and respond to environmental conditions, including software-defined radio, avionics, missiles, and electronic warfare systems.

Numerous communications between Shevlyakov and his customers and co-conspirators reflect the true destination of the products he imported – the Russian government and military.

Shevlyakov exchanged emails with Russia-based defense contractors about acquiring U.S. made parts, including analog-to-digital converters. Similarly, in or around March 2020, Shevlyakov exchanged emails with an employee of a Russia-based telecommunications company that is a contractor of the Russian government. The individual asked Shevlyakov, "How are you with delivery now? Can you send to Russia?" The individual then asked whether a certain U.S.-based electronics distributor could "deliver to you without problem" and asked Shevlakov about pricing for shipments. Shevlyakov responded: "Is there military in the planned order?"

Additionally, on or about May 20, 2020, one of Shevlyakov's front companies exchanged messages with a Russia-based individual about acquiring a licensed copy of Metasploit Pro, a U.S.-made software tool that is used to penetrate computer networks. Metasploit is intended for use in assessing network vulnerabilities, but is also widely used by computer hackers. A license to use Metasploit Pro costs approximately $15,000.

In the email, the individual asked Shevlyakov's front company to acquire Metasploit and detailed a history of prior failed attempts to acquire the software through third parties in countries outside Russia. The individual added that the software was "dual use" and that accordingly, "sales to Russia are virtually impossible." Thus, the individual said, "we cannot reveal the end user, nor can we identify ourselves." On or about June 1, 2020, the user of the front company email address wrote back, listing prices for different versions of Metasploit Pro.

Other communications from the defendant reflect an intricate logistics operation involving frequent courier trips by the defendant and others to deliver goods to Russia-based customers. Border crossing records for the period 2010-2016 show that in that period, the defendant crossed the Estonian border into and out of Russia approximately 102 times, many times on same-day roundtrips—usually driving, but also traveling by train or air.

The defendant was well aware that, as an individual on the Entity List, he was prohibited from purchasing items from U.S. distributors without a license. For example, on or about June 19, 2015, the defendant placed an order with a Massachusetts-based distributor of electronics components for 54 micropower temperature switches. A representative of the U.S. distributor emailed the defendant, stating that, because his name appeared on the Entity List, an export license was required for the order to be completed. The email included an image of the entry from the Entity List that listed the defendant. The defendant falsely stated that he was not the person named on the Entity List, but "another person" at "another address." Nevertheless, the defendant canceled the order, only to place it four days later from a different email address, under a different name.

In coordination with Shevlyakov's arrest on March 28, 2023, Estonian authorities seized a DHL shipment addressed to one of Shevlyakov's front companies. The shipment contained approximately 130 kilograms (286 pounds) of radio equipment.

## II. Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

In addition, the Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, these factors weigh against pretrial release and necessitate a sizable bail package.

## III. The Court Should Order Shevlyakov Detained

The factors to be considered in the detention analysis show that the defendant presents a substantial risk of flight that requires his detention after he is extradited to the United States.

The charged offenses are extremely serious. The defendant is charged with participating in a transnational fraud, money laundering and sanctions evasion scheme controlled by a foreign power that is actively engaged in armed conflict. While the investigation is ongoing, the evidence amassed against Shevlyakov includes, inter alia, (1) electronic communications between Shevlyakov, U.S. exporters, and Shevlyakov's customers in Russia; (2) invoices, shipping documents and other business records containing false information, including official forms filed with the Department of Commerce and other

3

government agencies; (3) bank and tax records reflecting the establishment and use of shell companies and illicit money movements; and (4) seized items that Shevlyakov was in the process of reshipping at the time of his arrest.  See, e.g., United States v. Fishenko, No. 12-CR-626, 2013 WL 3934174, at *2 (E.D.N.Y. July 30, 2013) (evidence of "pertinent recorded conversations and email exchanges that reveal [the defendant's] role in the conspiracy" weighed against release).  Shevlyakov faces a significant term of incarceration should they be convicted, which provides powerful incentive for them to flee.  See, e.g., United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) ("When the sentence . . . upon conviction is likely to be long . . . a defendant has stronger motives to flee.").  Most notably, Shevlyakov has no discernible ties to the United States and, based on the alleged offense conduct, has significant connections to the Russian Federation, a non-extradition country.

IV.     Conclusion

For all of these reasons, the government respectfully submits that the defendant represents a serious risk of flight if released on bond, and that no combination of conditions can assure his appearance if released.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/ Alexander Mindlin
Alexander Mindlin
Assistant U.S. Attorney
(718) 254-6433

cc:     Clerk of Court (by ECF)
        Defense Counsel (by email)